ASOCIACIÓN COOPERATIVA DEL FALANSTERIO, Plaintiff and Appellee, *v.* ANTONIO NAVARRO ET AL., Defendants and Appellants.

No. 10201. Argued January 2, 1951.—Decided February 14, 1952.

*Pedro E. Anglade, Hipólito Marcano,* and *José M. Valentín Esteves,* for appellants. *Rodolfo F. Aponte* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On November 8, 1948, the Asociación Cooperativa del Falansterio, appellee, filed an action of unlawful detainer at sufferance against five defendants, in the then District Court of San Juan. Before the trial, one of the defendants surrendered the apartment he occupied and the action against him

was abandoned. On December 30, 1949 judgment was rendered, granting the complaint against the other four defendants. Of these, only Antonio Navarro, José Peña Rivera, and Luis García Alvarez appealed to this Court.

The facts which gave rise to this litigation may be summed up as follows:

The Government of the United States was the owner in fee simple of a lot of 11,778 square meters in Puerta de Tierra, San Juan, and of a group of eight buildings, located therein, having 216 apartments which were rented as dwelling accomodations, all of which constituted the project known as the Falansterio, managed by the Puerto Rico Reconstruction Administration (PRRA), an instrumentality of the Government of the United States. In May, 1947 the tenants of the Falansterio decided to purchase it and to make propositions to the United States Government for the acquisition of said lot and buildings.

On January 13, 1948, the PRRA informed the committee appointed by the tenants to carry out their purpose, of the conditions of the transaction. Said conditions, insofar as pertinent herein, are as follows: the tenants would organize a cooperative which would purchase the lot from the Government of the United States; no owner or co-owner of a dwelling, or person having an income exceeding $300 monthly could be a member of the cooperative; the Government would sell the property to the cooperative association transmitting to the latter the use and possession thereof, but retaining the title to said property until the purchase price was fully paid; the cooperative association would in its turn sell to each of its members the usufruct of the apartment occupied by said member and was bound to see to it that the property was *exclusively* used as the home of the members and would not *lease* (among other express restrictions) the property without the previous written consent of the Government.

The cooperative association was organized under the laws in force. On June 16, 1948, the PRRA sent to each one of the 216 Falansterio tenants a letter terminating the lease contracts as of June 30, 1948.

On July 1, 1948 the Government of the United States conveyed to the association the use and possession of the Falansterio and 211 tenants signed contracts acquiring from the association the usufruct of the apartments which they occupied. Of the five remaining tenants, none of whom was eligible as members of the cooperative association, two submitted contracts which were rejected by the latter. The other three made no effort whatsoever to become members. The five of them, however, continued in the possession of their respective apartments and paying to the association the same monthly rental that the members themselves paid under their contract of usufructuary sale, receiving the corresponding receipts for their payment. On September 1, 1948, the association ordered them to vacate and surrender their apartments, since it did not wish to renew the lease contracts which had existed between them and the United States of America. Shortly thereafter, the present action was brought with the result previously stated.

On appeal, the defendants aver that the lower court committed the following errors: (1) holding that no contractual relations beginning on July 1, 1948 was established between plaintiff and defendants, and deciding that the latter were mere unlawful occupants; (2) holding that § 12–B of the Reasonable Rents Act, as amended by Act No. 24 of August 21, 1948 was not in point; (3) holding that § 209 (c) of the Federal Housing and Rent Act was not applicable; (4) holding that there was no undue joinder of party defendants and (5) granting the complaint.

Arguing their first assignment the appellants claim that beginning on July 1, 1948, after plaintiff had obtained the possession and use of the Falansterio, they continued to

pay, and plaintiff to accept, the same rental which theretofore they had been paying for their respective apartments to the Government of the United States under the lease contracts in force up to June 30, 1948; that plaintiff even went as far as to increase said rental in the amount of $2 monthly, which they likewise paid, whereby a contractual relation of landlord and tenant was created between plaintiff and defendants, and that, hence, they were not unlawful occupants, as held by the lower court.

We do not agree with appellants. The fact that the association accepted the payments made by the defendants and issued receipts for said payments, even including the $2 increase—which was not intended for them as lessees, but in a general way with respect to the other 216 apartments, in order to adjust plaintiff's income to its obligations with the Government of the United States under the contract of sale between them—did not create a new contractual relation between the association and defendants, since the former, under the terms of the contract referred to—and its articles of incorporation—could not lease the apartments *without the previous written consent of the Government*, being bound to see to it that "the property was exclusively used as the home of its members," and we have previously stated that none of the defendants was eligible to become a *member* of the association.

The defendants, as shown by the evidence, were aware of the terms and conditions—which were included in the contract—stipulated by the Federal Government for the sale of the property, because they had taken part in meetings and discussions held for that purpose. Consequently, they knew that they were not eligible to become members and that the association could not sell them the usufruct—foremost purpose and essential condition of the sale made by the Government of the United States—nor give them the apartments *under a lease*, for said contract contained express restrictions

to that effect. The association, therefore, never had the intention to create any contractual relation of landlord and tenant with the defendants upon receiving from the latter the aforesaid payments, and the defendants, in turn, could not expect the establishment of said relation for they knew that the actions of the cooperative association were limited to its articles of incorporation and its contract with the Government of the United States. Hence said payments were made—and received—as *compensation* for the use of the property, and not as rent. See, only as to this particular, *Ball* v. *Vilá,* 67 P.R.R. 388; *Vélez* v. *San Miguel,* 68 P.R.R. 534; *Vidal* v. *Mason,* 68 P.R.R. 558; *Vidal* v. *District Court,* 71 P.R.R. 544; and *Díaz* v. *Morales,* Per Curiam, 71 P.R.R. 648.

██ Nor do we agree with defendants as to the second assignment. The waiting period of six months established by § 12–B, after the lessor has served an authentic written notice on the tenant of his intention to recover the property, before he may file the unlawful detainer proceeding, can not be invoked in this case. The title of ownership of the immovable involved herein remained with the seller, United States of America, because the latter retained it until the total sum due was fully paid. Said property, therefore, is exempt from the provisions of the Reasonable Rents Act —No. 464 of April 25, 1946—by virtue of § 4 thereof, which exempts from its provisions the properties belonging to "the agencies or instrumentalities of the Government of the United States of America." The amendment introduced by Act No. 395 of May 13, 1947 to said § 4—and which Act No. 202 of May 14, 1948 also included—in the sense that "said properties shall be subject to the provisions of this Act in case the lessees thereof sublease same to private persons" does not subject the property in question herein to the provisions of said Act, for plaintiff is not a *lessee* but a *usufructuary* of the immovable in question, under the contract of

sale with the Government of the United States, and because, consequently, it has not *subleased* in whole nor in part said immovable to private persons.

The third error assigned was not committed. Although the provision of § 209(c) of the Federal Housing and Rent Act of 1948, regarding the 60-day waiting period prior to eviction, after the lessor has served written notice to the effect that he wishes to recover possession of the dwelling, existed in the federal legislation in force at the time of the filing of the complaint, it was eliminated by Public Act No. 31 of the 81st Congress, First Session, which became effective on April 1, 1949. 50 USCA App. 1899. But even assuming that such requirement had existed, a term much longer than the 60-day waiting period had elapsed from the service of said notice until judgment was rendered. *Alméstica* v. *Lafitte*, 69 P.R.R. 325.

■■ The fourth and fifth assignments were not discussed by the appellants and, therefore, we shall not consider them.

Now: after this unlawful detainer proceeding had already commenced, new regulations were approved by the Housing Expediter on April 1, 1949 under the new federal rent legislation which became effective on that date. The first paragraph of § 825.6(a) provided:

"825.6—*Removal of tenant—(a) Restrictions on removal of tenant.* So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, *notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated,* and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which provides for surrender of possession, or for entry of judgment upon the tenant's confession for breach of the covenants thereof, or which otherwise provides contrary hereto, except on one or more of the

grounds specified in this paragraph (*a*), or unless the landlord has obtained a certificate in accordance with paragraph (*c*) of this section: *Provided, however,* That no provisions of this section shall be construed to authorize the removal of a tenant unless such removal is authorized under local law." (Italics ours.)

[It is not necessary to enumerate the six categories for unlawful detainer included in said Section because the present action is not based on any of them.]

Section 825.6 (*c*) provides:

"(*c*) *Eviction certificate; grounds for issuance.* No tenant shall be removed or evicted on grounds other than those stated in paragraph (*a*) of this section, unless on petition of the landlord the Housing Expediter certifies that the landlord may pursue his remedies in accordance with the requirements of local law. The certificate shall authorize the pursuit of local remedies at the expiration of the waiting period specified in paragraph (*d*) of this section. The Expediter shall so certify if he finds that removals or evictions of the character proposed are not inconsistent with the purposes of the act or this regulation and would not be likely to result in the circumvention or evasion thereof. The Expediter shall so find in the following cases:

"(1) . . . . . . . .

"(*b*) In the case of housing accommodations in a structure or premises owned by a cooperative corporation or association, no certificate shall be issued by the Expediter to a purchaser of stock or other evidence of interest in such cooperative, who is entitled by reason of such ownership of stock or other evidence of interest to possession of such housing accommodations by virtue of a proprietary lease or otherwise, unless stock or other evidence of interest in the cooperative has been purchased by persons who are tenants in occupancy of at least 65 per cent of the housing accommodations in the structure or premises and are entitled by reason of such ownership to proprietary leases of housing accommodations in the structure or premises."

And 825.6 (*d*) in connection with the waiting period prior to the commencement of the unlawful detainer proceeding under the local law, provides:

"(*d*) *Eviction certificates; waiting period.* Certificates issued under paragraph (*c*) of this section shall authorize the pursuit of local remedies at the expiration of three months from the date of the filing of the petition; *Provided, however,* That:

"(1) In cases under paragraph (*c*) (5) of this section the waiting period shall be six months;

"(2) In cases under paragraph (*c*) (2) (*a*) of this section the waiting period shall extend at least until two months from the date the certificate is issued;

"(3) In any case where the Expediter finds that by reason of exceptional circumstances extreme hardship would result to the landlord, he may waive all or part of the waiting period."

Section 825.6 (*h*) in connection with cases pending in courts on April 1, 1949 under the Federal Housing and Rent Act of 1947, amended in 1948, authorized the Housing Expediter to reduce the waiting period established by § 825.6 (*d*) for the commencement of the unlawful detainer proceeding, in the cases where a certificate of eviction is issued to bring it under the local law, taking into consideration the time elapsed since notice was originally served on the tenant.

The new Regulations of the Housing Expediter being already in force, as we said, the instant case was tried on May 6, 1949 and judgment rendered on December 30. There is nothing in the record on appeal indicating that the plaintiff complied with the requirement of obtaining from the Housing Expediter the eviction certificate authorizing him to institute—in this case *to continue,* since this was a *pending* case, § 825.6 (*h*) of the Regulations—his unlawful detainer proceeding under the local law.

On June 21, 1951 we asked the parties to file briefs on the effect of §§ 825.6 (*a*) and 825.6 (*c*) of the already cited Regulations on this litigation.[1] Plaintiff holds that the said

---

[1] Plaintiff submitted the information requested. None of the defendants submitted his. [This footnote corresponds to No. 4 in the Spanish version of this opinion.]

Regulations are not applicable since between it and the defendants there has never existed a contractual relation of landlord and tenant. It cites in that connection *Porter* v. *Woodard*, 60 S. E. 2d 199 (1950). Such contention lacks merit, for § 825.6(a) protects tenants despite the lack of a lease contract or that the latter has expired or otherwise terminated. *Porter* v. *Woodard, supra,* is not applicable to the case at bar. There the scope of § 209(c) of the Federal Rent Act was construed, and not § 825.6(c) of the Regulations whose clear language needs no interpretation.

Plaintiff admits that were the Regulations applicable, the certificate of eviction required by § 825.6(c) is necessary, since the reason for the unlawful detainer is not based on any of the categories enumerated in § 825.6(a). It holds, however, that the lack of said certificate could not prevent the lower court from rendering the proper judgment, since it was not a jurisdictional requisite, it being sufficient to obtain—since this was a case pending in court on April 1, 1949—said certificate prior to the eviction of the tenant. Plaintiff is not correct. In order to go on with its unlawful detainer suit, it had to apply to the Housing Expediter for the certificate of eviction. *Woods* v. *Durr*, 176 F. 2d 273, 277. Said certificate is a prerequisite not for the eviction —as it was in the waiting period of 60 days pursuant to § 209(c) before it was eliminated by the 1949 amendments *Porter* v. *Woodard, supra*—but for the *commencement* of the action under the local law.

Said prerequisite is a matter of proof rather than a matter of pleading pursuant to *Glink* v. *Pennell*, 79 N. E. 2d 672, even though the view which seems to prevail in the majority of the jurisdictions is that when it is not affirmatively alleged that a certificate of eviction has been obtained, the complaint does not state facts constituting a cause of action. *Ritchie* v. *Johnson*, 144 P. 2d 922; *Glano* v. *Johnston*, 199 S. W. 2d 649; *Morrison* v. *Hutchins*, 144 P. 2d 922;

*Bell* v. *Dennis*, 144 P. 2d 938; *Lester* v. *Isaac*, 146 P. 2d 524; *Berlinsky* v. *Eisenberg*, 59 A. 2d 327.

In the case at bar, since it was pending at the time that the Regulations went into effect, in the absence of complementary pleadings to that effect, the evidence should have established the fact that the certificate of eviction had been obtained. In default of this, it is insufficient to uphold the judgment for unlawful detainer, and we are unable to consider, in order to make up for said defect, the certificates of eviction,[2] directly submitted by plaintiff to this Court, and which were issued by the Housing Expediter on August 24 and September 6, 1951.

However, since none of the parties in this action, nor the lower court, considered the effect in the case of the new provisions of the Federal Regulations, just as the National Supreme Court did in *Woods* v. *Durr*, Per Curiam, 336 U. S. 941, 93 L. Ed. 1099—see *Woods* v. *Durr*, 170 F. 2d 976 and the same case, *supra*—we shall vacate the judgment and remand the case to the lower court with directions to reopen the case in order to give to the parties an opportunity to elaborate the evidence only as to the obtaining of the certificate of eviction, after which it shall proceed to render the proper judgment pursuant to the facts and the law and consistent with this opinion.

MR. CHIEF JUSTICE TODD, JR., concurring.

Notwithstanding my dissent in *Vélez* v. *San Miguel*, 68 P.R.R. 534; *Vidal* v. *Mason*, 68 P.R.R. 558; *Vidal* v. *District Court*, 71 P.R.R. 544 and *Díaz* v. *Morales*, 71 P.R.R. 648 cited in the opinion of the majority, I concur herein because I consider that the facts in the instant case render

---

[2] On August 24 and September 10, 1951 plaintiff appeared in writing before this Court with several motions informing "Administrative Actions" of the Housing Expediter, attaching thereto certificates of eviction issued by said officer in the cases of the defendants-appellants. [This footnote corresponds to No. 5 in the Spanish version of this opinion.]

inapplicable the reasonings set forth in my dissenting opinions in those cases. I shall explain. Plaintiff herein was expressly forbidden to lease the Falansterio Apartments and defendants had knowledge of said prohibition. Therefore, the action of plaintiff in accepting and of defendants in paying, such or other sums of money, was not meant as rent of a lease which could not validly exist between the parties.